# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 17-22177-Civ-WILLIAMS/TORRES

GALINA PERSIYANTSEVA,

      Plaintiff,

v.

SAINT PETERSBURG MARKET, LLC, a
Florida limited liability company d/b/a
EUROPEAN DELIGHTS MARKET &
DELI, and YUOZAS PAULAUSKAS, an
individual,

      Defendants.

_____/

## REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION
## FOR FINAL DEFAULT JUDGMENT AGAINST ALL DEFENDANTS

This matter is before the Court on Galina Persiyantseva's ("Plaintiff") motion for final default judgment against Saint Petersburg Market, LLC d/b/a European Delights Market & Deli ("Saint Petersburg"), and Yuozas Paulauskas ("Paulauskas") (collectively, "Defendants").   [D.E. 26].   No response was filed by any of the Defendants and therefore the matter is ripe for disposition.   Based on a review of the motion and the underlying record in this case, we recommend that Plaintiff's motion be **GRANTED in part** and **DENIED in part**, and that final default judgment be entered against all Defendants.[1]

---

[1]   On April 18, 2018, the Honorable Kathleen Williams referred Plaintiff's motion for default judgment to the undersigned Magistrate Judge.   [D.E. 28].

1

## I. BACKGROUND

On June 9, 2017, Plaintiff filed a two-count complaint against Defendants for violations of the Fair Labor Standards Act ("FLSA").   [D.E. 1].   Plaintiff alleged a claim for unpaid overtime in Count I and a retaliation claim in Count II. Defendants initially participated in this lawsuit when they filed their answer and affirmative defenses on July 5, 2017.   [D.E. 7].   Thereafter, the parties filed their joint scheduling report.   [D.E. 10].   On September 6, 2017, the Court permitted Defendants' counsel to withdraw from the case and required that Paulauskas "either (a) retain new counsel and have counsel enter a notice of appearance with the Court or (b) inform the Court that he wishes to proceed *pro se*." [D.E. 15].   The Court also ordered that by no later than September 18, 2017, the corporate defendant, Saint Petersburg, must retain new counsel and issue a notice of appearance.   *See id.*

Neither of the Defendants complied with the Court's directives.   On October 3, 2017, the Court entered an Order to Show Cause.   [D.E. 23].   That Order to Show Cause required Defendants to show why sanctions should not be imposed and default entered against them for failure to comply with the Court's order.   Defendants failed to comply with that deadline and on October 25, 2017, the Court directed the clerk to enter default against Defendants.   The Court also required that Plaintiff file a motion for default judgment by no later than November 20, 2017.   [D.E. 24].   On October 25, 2017, the Clerk entered defaults against Defendants.

## II. APPLICABLE PRINCIPLES AND LAW

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for obtaining default judgment.  First, when a defendant fails to plead or otherwise defend a lawsuit, the clerk of court is authorized to enter a clerk's default.  *See* Fed. R. Civ. P. 55(a).  Second, after entry of the clerk's default, the court may enter default judgment against the defendant so long as the defendant is not an infant or incompetent person.  Fed. R. Civ. P. 55(b)(2).  "The effect of a default judgment is that the defendant admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by entry by the judgment, and is barred from contesting on appeal the facts thus established."  *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (internal quotation and citation omitted).

A court must review the sufficiency of the complaint before determining whether a moving party is entitled to default judgment pursuant to Rule 55(b).  *See United States v. Kahn*, 164 F. App'x 855, 858 (11th Cir. 2006) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206) (5th Cir. 1975)).  "While a complaint . . . does not need detailed factual allegations," a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  If the admitted facts are sufficient to establish liability, the Court must then ascertain the appropriate amount of damages and enter final judgment in that amount.  *See Nishimatsu*, 515 F.2d at 1206; *see also PetMed Express, Inc. v.*

3

*MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1216 (S.D. Fla. 2004).

Damages may be awarded only if the record adequately reflects the basis for the award, which can be shown with submission of detailed affidavits establishing the facts necessary to support entitlement to the damages requested. *See Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985). An evidentiary hearing on the appropriate amount of damages is not required by Rule 55, and it is within the Court's discretion to choose whether such a hearing should takes place. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); *Tara Productions, Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911-12 (11th Cir. 2011). With this guidance in mind, we turn to the allegations found in Plaintiff's complaint to determine whether default judgment is appropriate.

### *III. ANALYSIS*

Plaintiff's motion seeks an entry of final default judgment against Defendants for failure to comply with the Court's directives and acquire new counsel in defense of this action. Broadly speaking, Plaintiff seeks (1) an entry of final default judgment in Plaintiff's favor for $3,562.50 in back wages for overtime pay, (2) $3,562.50 in liquidated damages on the overtime claim, (3) $5,037.68 in economic damages for back pay, (4) $5,037.68 in liquidated damages for Plaintiff's back pay, (5) $9,490 in economic damages for Plaintiff's front pay, (6) $9,490 in liquidated damages for Plaintiff's front pay, (7) $20,000 for Plaintiff's non-economic/emotional distress damages, and (8) $20,000 in liquidated damages for Plaintiff's non-economic damages/emotional distress claim.

4

A.    _FLSA Overtime Claim_

The first issue is whether Plaintiff is entitled to final default judgment on her overtime wage claim.  The FLSA requires that employers pay their employees at least one and a half times the "regular rate" for any work in excess of 40 hours per week.  *See* 29 U.S.C. § 207(a)(1) (prohibiting "a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed").   When a covered employee is not paid the overtime wage, the FLSA provides a private cause of action against the employer for unpaid wages.  *See* 29 U.S.C. § 216(b); *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011).  The law, however, does not require that an employee be compensated solely on an hourly rate; an employee may also be compensated on a "piece-rate, salary, commission, or other basis," provided that "the overtime compensation due to [the] employee[ ] must be computed on the basis of the hourly rate derived therefrom."  29 C.F.R. § 778.109(2013).

"To state a claim for failure to pay overtime compensation under the FLSA, an employee must show: (1) an employment relationship; (2) the employee is subject to individual or enterprise coverage; and (3) that the employee worked over forty hours per week but was not paid overtime wages."   *Gomez v. Kern*, 2012 WL 1069186, at *1 (S.D. Fla. Mar. 29, 2012) (citing *Freeman v. Key Largo Volunteer Fire & Rescue Dep't, Inc.*, 841 F. Supp. 2d 1274 (S.D. Fla. 2012); *Josendis, Inc.,* 662 F.3d at 1315 (individual and enterprise coverage are essential elements of an FLSA claim)).

The effect of the entry of a default is that all of the factual allegations in the complaint are taken as true, save for the amount of unspecified damages. Thus, if liability is well-plead in the complaint, it is established by the entry of a default. *Buchanan v. Bowman,* 820 F.2d 359, 361 (11th Cir. 1987). However, a court may enter a default judgment *only* if the factual allegations of the complaint provide a sufficient legal basis for entry of a default judgment. *See Nishimatsu Constr. Co.,* 515 F.2d at 1206.

Plaintiff argues that she has met all three elements for an overtime wage claim. First, Plaintiff suggests that Defendants hired her as a cashier and clerk and that at all times Defendants were an employer within the meaning of the FLSA. As for the second element – that Defendants are a covered enterprise under the FLSA – Plaintiff claims in her complaint that Saint Petersburg was an enterprise engaged in interstate commerce and that Defendants regularly operated businesses in commerce for the production of goods. Moreover, Plaintiff contends that Defendants opened a restaurant and handled goods that were used in interstate commerce, leading to an annual gross volume of sales on behalf of Defendants in the amount of at least $500,000.

Because Plaintiff believes that she has pled all three elements in support of an overtime wage claim and a defaulted party is deemed to have admitted all well-pled allegations in a complaint, she concludes that he is entitled to default judgment. *See Nishimatsu Constr. Co., Ltd., v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations

of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established . . . A default judgment is unassailable on the merits but only so far as it is supported by well-pleaded allegations, assumed to be true.") (citations omitted).

After careful review of Plaintiff's complaint and the affidavit submitted in support of her motion for default judgment [D.E. 26], we find that Plaintiff has alleged all the elements of a FLSA overtime claim.   First, Plaintiff has sufficiently alleged that she was at all times an employee under the FLSA and that her relationship with Defendants lasted from May 9, 2016 to August 16, 2017.   Second, Plaintiff has plausibly alleged that Defendants are a covered enterprise under the FLSA because Defendants have an annual gross volume of sales of at least $500,000 and they sell specialty foods that are manufactured throughout the United States.[2] And finally, Plaintiff has met the third element because she claims that she worked more than 40 hours per week, but that Defendants willfully failed to compensate Plaintiff at the statutory rate of time and one-half.   Because Plaintiff has met all three elements of an FLSA overtime claim, we must determine the appropriate amount of damages.

---

[2]    The FLSA defines an "enterprise engaged in commerce" as, among other things, an enterprise with annual gross revenue of $500,000 or greater.   29 U.S.C. § 203(s).   For "individual coverage" to apply under FLSA, Plaintiff must prove that he was: 1) engaged in commerce or 2) engaged in the production of goods for commerce.   29 U.S.C. § 206(a)(1).   The work of employees "engaged in commerce" involves or relates to "the movement of persons or things (whether tangibles or intangibles, and including information and intelligence) among the several States or between any State and any place outside thereof." 29 C.F.R. § 776.9 (quotation omitted).

**B.**   *Overtime Damages*

As stated above, a plaintiff is entitled to be compensated for one and one-half times the regular rate for all hours worked in excess of forty hours per workweek. *See Walling v. Helmerich & Payne*, 323 U.S. 37, 42 (1944) ("[T]he parties to the contract must respect the statutory policy of requiring the employer to pay one and one-half times the regular hourly rate for all hours actually worked in excess of 40"). "Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.,* 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999).   If a default judgment is warranted, the court may hold a hearing for the purposes of assessing damages.   *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997) (citing Federal Rule of Civil Procedure 55(b)(2)).   However, a hearing is not necessary if sufficient evidence is submitted to support the request for damages.   *Id.*

It is well established that "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Etienne v. Inter-County Sec. Corp.,* 173 F.3d 1372, 1375 (11th Cir. 1999) (quoting *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946)). In

this case, Defendants have not answered the complaint. Therefore, Plaintiff's "affidavit is sufficient evidence to show the amount and extent of the work she performed." *Gomes v. Nationwide Janitorial & Flooring Servs., Inc.*, 2007 WL 737584, at *2 (M.D. Fla. Mar. 7, 2007).

As explained in her declaration, Plaintiff seeks compensation for 178.5 hours of work where he was paid "straight time" for hours worked in excess of forty in a workweek, instead of at the rate of time and one-half. Plaintiff's regularly hourly rate was $10 per hour. This means that, for each of the 178.5 hours worked, Plaintiff was not paid $5.00. Plaintiff therefore seeks $892.50 ($5 x 178.5 hours) for "straight time" hours. Plaintiff also seeks compensation for 3 hours per week where Plaintiff worked in excess of 40 hours, but was paid nothing. This equates to $15 for each overtime hour or $45 each week Plaintiff was employed. Because Plaintiff was employed for 52 weeks, Plaintiff seeks a total of $2,340 in additional compensation ($45 x 52 weeks). Plaintiff's final overtime claim is premised on the allegation that she spent 22 hours at employee meetings for which she was paid no overtime wages. Therefore, Plaintiff seeks $330 ($15 x 22 hours) for unpaid meetings.

After full consideration of Plaintiff's affidavit and the information attached in support of her motion, we find that Plaintiff is owed nearly the entire amount sought in her motion. The only discrepancy (and it is a small one) in Plaintiff's calculations is where she seeks 22 hours for employee meetings. Plaintiff claims that this equates to $15 per hour. But, Plaintiff's motion states that these were hours that Plaintiff did not receive overtime wages – not compensation altogether. By

Plaintiff's own allegations, she is only entitled to $110 ($5 x 22 hours) as opposed to $330 ($15 x 22).   When calculated alongside the other sums, Plaintiff is owed $892.50 ($5 x 178.5 hours) in "straight time" hours, $2,340 ($45 x 52 weeks) for uncompensated overtime, and $110 ($5 x 22 hours) for unpaid attendance meetings. We therefore conclude that Plaintiff's overtime wage claim equates to $3,342.50 and that Plaintiff's motion should be **GRANTED in part** and **DENIED in part**.

### C.   _Liquidated Overtime Damages_

The next question is whether Plaintiff is entitled to liquidated overtime damages.   In her complaint, Plaintiff repeatedly alleges that Defendants willfully violated the FLSA.   By failing to answer the complaint, Defendants admit that they acted willfully in failing to pay Plaintiff the statutorily required minimum wage for hours worked.   When, as here, Defendants have not presented a defense that the failure to pay minimum wages was in good faith, the court must also require the employer to pay liquidated damages in an additional amount equal to "the amount of their unpaid minimum wages." 29 U.S.C. §§ 216(b), 260; _Weisel v. Singapore Joint Venture, Inc.,_ 602 F.2d 1185, 1191 n. 18 (5th Cir. 1979).   Accordingly, Defendants are liable, jointly and severally, to pay Plaintiff the amount of unpaid minimum wages owed to her, $3,342.50, as liquidated damages.

### D.   _FLSA Retaliation Claim_

Plaintiff alleges in Count II of her complaint that Defendants retaliated against her in violation of Section 215 of the FLSA.   By Defendants' failure to prosecute this action, Plaintiff's allegations are admitted.   The FLSA forbids any

person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint" alleging a violation of the Act. 29 U.S.C. § 215(a)(3).   The Supreme Court has held that the anti-retaliation provision covers oral, as well as written, complaints.   *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 2 (2011).   To establish a retaliation claim, a plaintiff must show that 1) she was engaged in protected activity under the FLSA; 2) she suffered an adverse action by his employer; and 3) a causal connection exists between Plaintiff's activity and the adverse action.   *See Wolf v. Coca–Cola Co.,* 200 F.3d 1337, 1342–43 (11th Cir. 2000).

Here, Plaintiff has pled sufficient facts to state a claim for retaliation under the FLSA.   According to her complaint, Plaintiff sent Defendants a demand letter on May 25, 2017 for violations of the FLSA with respect to Plaintiff's overtime wages.   Shortly after receipt of the demand letter, Plaintiff suffered an adverse action by Defendants because Plaintiff's work hours were reduced in retaliation for asserting her FLSA rights and engaging in a protected activity.[3]   Plaintiff's contention that her schedule was reduced for no legitimate reason following her complaint also establishes a sufficient causal connection between Plaintiff's demand

---

[3]     The relevant FLSA provision provides in part: "[I]t shall be unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . ."   29 U.S.C. § 215(a)(3).

letter and Defendants' actions.[4]   Therefore, Plaintiff has stated a retaliation claim pursuant to the FLSA.  *Echevarria v. Marcvan Rests., Inc.,* 2013 WL 1881313, at *1 (M.D. Fla. May 3, 2013) (granting default judgment when plaintiff alleged that she "complained to Defendant that she was not paid the federal minimum wage under the FLSA, she was terminated by Defendant, and her termination was caused by her complaint about the alleged FLSA violation."). Accordingly, default judgment should be **GRANTED** as to Plaintiff's retaliation claim.

### E.   *Front Pay Damages for Retaliation Claim*

Upon establishing a claim for retaliation under the FLSA, 29 U.S.C. § 215(a)(3), an employer is "liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of [the FLSA], including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).   Front pay is money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement.  *See Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001).   Generally speaking, front pay is ordinarily limited to cases where reinstatement of the employee is not possible due to extenuating circumstances and necessary to provide relief to the victim of

---

[4]   The causal connection may also be established by the allegation that Defendants often yelled and belittled Plaintiff in front of customers and fabricated stories of complaint about Plaintiff's work in an effort to pressure Plaintiff to quit her job.  Defendants' conduct continued thereafter with retaliation efforts to prevent Plaintiff from taking a planned vacation and her ultimate termination that took place on August 16, 2017.

discrimination. *See E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 619 (11th Cir. 2000). "Front pay may be particularly appropriate in lieu of reinstatement where discord and antagonism between the parties would render reinstatement ineffective as a make-whole remedy." *Goldstein v. Manhattan Indus.*, 758 F.2d 1435, 1449 (11th Cir. 1985). However, the Eleventh Circuit has indicated that courts must be careful when awarding front pay as it can overcompensate a plaintiff, and that it is "warranted only by egregious circumstances." *Lewis v. Fed. Prison Indus., Inc.*, 953 F.2d 1277, 1281 (11th Cir. 1992). "The duty to mitigate damages by seeking employment elsewhere will, of course, limit the amount of front pay available." *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1562 (11th Cir. 1988).

Here, Plaintiff contends that she is a 58 year old Russian woman who does not speak English and has had trouble acquiring employment after her termination on August 16, 2017. Plaintiff was unemployed for approximately seven weeks until October 5, 2017 when she was finally hired on a part-time basis folding clothes in a retail store. Although Plaintiff's hours are not steady at her new job, she has worked a maximum of 32.5 hours in a given week and paid $9 per hour. Plaintiff therefore seeks front pay damages for 52 weeks of work and the difference between what Plaintiff would have made per week at her former job ($475) when compared to the income at her new job ($292.50[5]) is $182.50. Accordingly, Plaintiff requests that Defendants pay $9,490 ($182.50 x 52) in front pay damages for 52 weeks of work.

---

[5]    This figure is based on the largest amount Plaintiff has been paid at her job which equates to $9 per hour for 32.5 hours worked.

Plaintiff's argument is well taken.   There is no indication that Plaintiff is able to be reinstated in her former position and Plaintiff requests front pay for a reasonable number of weeks following her termination.   *See, e.g., Lee v. HQM of Fort Myers, LLC*, 2012 WL 3545700, at *4 (M.D. Fla. July 26, 2012), *Report and Recommendation adopted*, 2012 WL 3548062 (M.D. Fla. Aug. 16, 2012) ("The Plaintiff is requesting front pay from the date of judgment through the year 2013. The Court recommends an award to the Plaintiff of front pay from September 2012 through December 2013").   We therefore recommend that Plaintiff's motion be **GRANTED** and that she receives $9,490 in front pay damages for 52 weeks of work.

### E.   *Back Pay Damages for Retaliation Claim*

Plaintiff seeks $5,037.68 in back pay damages.   In determining the amount of back pay due, Plaintiff has a duty to mitigate her damages, and it is proper to deduct Plaintiff's subsequent earnings from her lost wages.   *See, e.g., Nord v. U.S. Steel Corp.,* 758 F.2d 1462, 1471–72 (11th Cir. 1988) (district court erred in failing to deduct interim earnings from back pay award under Title VII).   In the approximate 5.5 weeks where Plaintiff has worked part-time for her post-termination employer (since October 5, 2017), her hours have ranged from as few as 13 to as many as 32.5. And at a rate of $9 per hour, Plaintiff contends that she has earned $899.92 at her new job from October 5, 2017 through the date of filing her declaration on November 17, 2017.   But, had Plaintiff been making $475 per week since October 5, 2017 at her former job, she would have earned $2,612.50 ($475 x 5.5 weeks = $2,612.50).   Thus, since October 5, 2017, Plaintiff suggests that she earned $1,712.68 less due to her

termination ($2,612.50 – $899.82 = $1,712.68).

Moreover, Plaintiff argues that she should be entitled to $3,325 for the 7 weeks she was unemployed until October 5, 2017.  Had Plaintiff not been retaliated against and continued her employment during that time period, she would have been paid approximately $3,325 ($475 per week x 7 weeks = $3,325). Therefore, Plaintiff requests an award of $5,037.68 in back pay damages ($3,325 +$1,712.68 = $5,037.68). Based on the allegations deemed admitted and the figures that are adequately supported in Plaintiff's affidavit, we recommend that Plaintiff's motion be **GRANTED** and that she be awarded back pay in the amount of $5,037.68.

### G. *Non-Economic Damages for Retaliation Claim*

Plaintiff claims to have suffered $20,000.00 in non-economic damages for mental pain and anguish as a result of her unlawful termination.   Indeed, Plaintiff alleges that she worries constantly about her future because she has significantly less money for gas, food, and other staples of life and that constant stress interferes with her ability to sleep.  In support of her motion, Plaintiff provided an affidavit where she suggests that Defendants constantly insulted her, belittled her work, and made her life miserable knowing that Plaintiff could not afford to quit due to her financial responsibilities to her family.

Because Plaintiff alleges that she suffers from a variety of ailments as a result of Defendants' unlawful conduct and she adequately supported these conditions with an affidavit, Plaintiff should be awarded $20,000 in non-economic damages.  *See, e.g.*, *Lee*, 2012 WL 3545700, at *4 ("The Plaintiff asserts that she suffered 'bouts of

sleeplessness, headaches, loss of appetite, nausea, irritability stomach pain and depression as well as humiliation, loss of self worth and lost of trust of employers.' Her symptoms continued for seven months. The Court recommends based upon the Plaintiff's allegations, that she be awarded $20,000.00 in non-economic damages.") (internal citations omitted).   To this extent, Plaintiff's motion should be **GRANTED**.

### H.   *Liquidated Damages for Retaliation Claim*

Next, Plaintiff requests liquidated damages on her retaliation claim in the amount of $34,527.68 ($5,037.68 for back pay + $9,490 for front pay + $20,000 for non-economic damages = $34,527.68).   Plaintiff contends that liquidated damages are mandatory for retaliation claims under the FLSA and that the Court has no discretion to alter Plaintiff's award.   Therefore, Plaintiff concludes that she is entitled to an *additional* $34,527.68 in liquidated damages on her retaliation claim.

But, Plaintiff's argument is unpersuasive.   The award of liquidated damages in FLSA cases is governed by 29 U.S.C. § 216(b), which states in pertinent part:

> Any employer who violates the provisions of section 206 or section 207 of this title [minimum wage or overtime provisions] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Any employer who violates the provisions of section 215(a)(3) of this title [retaliation provision] shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.

29 U.S.C. § 216(b).

16

The Eleventh Circuit has determined that as applied to retaliation claims under the FLSA, an award of liquidated damages is discretionary, and that it "gives the district court discretion to award, or not to award, liquidated damages, after determining whether doing so would be appropriate under the facts of the case." *Moore v. Appliance Direct, Inc.*, 708 F.3d 1233, 1243 (11th Cir. 2013). Indeed, "the liquidated damage provision is not penal in its nature but constitutes compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 934 (11th Cir. 2000). Therefore, damages are intended to compensate Plaintiff, and punitive damages are not included. *Id*.

In this case, we find that the amounts awarded above adequately compensate Plaintiff for Defendants' violations of the FLSA and that the facts of this case do not justify an additional award of liquidated damages for Plaintiff's retaliation claim. *See Moore*, 708 F.3d at 1243 ("We therefore hold that the retaliation provision of 29 U.S.C. § 216(b) gives the district court discretion to award, or not to award, liquidated damages, after determining whether doing so would be appropriate under the facts of the case.   The district court made the determination in this case that it would not be appropriate, and in declining to award liquidated damages it did not abuse its discretion.").   The substantial sums that we recommend, including unpaid overtimes wages, back pay, front pay, and non-economic damages are sufficient to

17

alleviate the harm Plaintiff suffered.   Accordingly, Plaintiff's motion for liquidated damages in conjunction with her retaliation claim should be **DENIED**.

### I.   *Attorney's Fees and Costs*

The final issue is whether Plaintiff should be entitled to attorney's fees and costs.   The FLSA mandates that in any action brought by an employee to enforce section 206 or 207 of the Act, the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. 216(b).   In *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983), the Supreme Court stated that "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."   This amount, which is commonly referred to as the lodestar, is then adjusted to reflect the "results obtained."   *Id.* at 434; *accord Norman v. Hous. Auth.,* 836 F.2d 1292, 1299-1302 (11th Cir. 1988).

The "'fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates.'"   *ACLU v. Barnes,* 168 F.3d 423, 427 (11th Cir.1999) (quoting *Norman,* 836 F.2d at 1303).   This means that Plaintiff must produce satisfactory evidence that the requested rate is within the prevailing market rates and supports the number of hours worked and the rate sought.   *Hensley,* 461 U.S. at 433.   "[F]ee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district

18

court can assess the time claimed for each activity." *Norman,* 836 F.2d at 1303. Moreover, Plaintiff must provide "fairly definite information" concerning activities performed by each attorney. *See Mallory v. Harkness,* 923 F. Supp. 1546, 1556 (S.D.Fla.1996) (quoting *FMC Corp. v. Varonos,* 892 F.2d 1308, 1317 (7th Cir. 1990)). Ultimately, the Court may use its discretion and expertise to determine the appropriate hourly rate to be applied to an award of attorney's fees. *See Scelta v. Delicatessen Support Servs., Inc.,* 203 F. Supp. 2d 1328, 1331 (M.D. Fla. 2002).

Here, Plaintiff requests that she be permitted to file a separate motion for attorney's fees and costs within thirty (30) days of the entry of final default judgment. Because Plaintiff must produce evidence in support of her counsel's hourly rate and the number of hours reasonably expended in this litigation, Plaintiff's motion should be **GRANTED** and Plaintiff should be permitted to file a separate motion for fees and costs within thirty (30) days of the entry of final default judgment

### IV. CONCLUSION

Based on the uncontested facts, we hereby **RECOMMEND** that Plaintiff's motion for final default judgment against Defendants [D.E. 26] be **GRANTED in part** and **DENIED in part** and that the District Court issue an Order that:

A. Enters final judgment against Defendants for violations of the FLSA for an unpaid overtime claim in Count I and a retaliation claim in Count II.

B. Enters damages on Plaintiff's overtime wage claim in the amount of $3,342.50.

C. Enters liquidated damages on Plaintiff's overtime wage claim in the

amount of $3,342.50.

D. Enters back pay damages on Plaintiff's retaliation claim in the amount of $5,037.68.

E. Enters front pay damages on Plaintiff's retaliation claim in the amount of $9,490.00.

F. Enters non-economic damages on Plaintiff's retaliation claim in the amount of $20,000.

G. Denies Plaintiff's motion for liquidated damages on her retaliation claim.

H. Permits Plaintiff to file a separate motion for fees and costs within thirty (30) days of the entry of final default judgment.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.   Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.   28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida this 3rd day of

May, 2018.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge